# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7737 | **DATE** | 4/25/2003 |
| **CASE TITLE** | Breznica Shefqet vs. John Ashcroft, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Petitioner has shown there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents have thirty days to remove Petitioner from the country. If Respondents cannot remove Petitioner within thirty days, Petitioner's writ of habeas corpus will issue and Petitioner shall be released on conditions suitable to the INS, which may include those set forth in 8 C.F.R. Section 24.5. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **BREZNICA SHEFQET** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 02 C 7737 |
| ) | Paul E. Plunkett, Senior Judge |
| **JOHN ASHCROFT, ET AL.,** ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION AND ORDER

Breznica Shefqet[1] ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner has been ordered deported from the United States and is being detained pending his removal. He claims that his continued detention pending removal from the country is contrary to the laws of the United States. For the following reasons, the petition will be granted if Respondents fail to remove Petitioner from the country within thirty (30) days.

### I. Background

Petitioner, a native of Yugoslavia[2], entered the United States without inspection in 1989. His status was adjusted to that of an asylee on April 6, 1993. Since 1993, he has been convicted of

---

[1] Petitioner's name has appeared on various documents as both "Shefqet Breznica" and "Breznica Shefqet". To avoid confusion, we will refer to him as Petitioner.

[2] Petitioner asserts he is an Albanian from Kosovo.



numerous state criminal law violations in the circuit court of Illinois[3]. (Resp. Ex. 2.) Pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act[4], the Immigration and Naturalization Service (the "INS") initiated removal proceedings against Petitioner. (*Id.*) On December 14, 1999, an immigration judge ordered Petitioner removed from the United States to Yugoslavia. (Resp. Ex. 1.) Petitioner was in the custody of the Illinois Department of Corrections until October 1, 2001, at which time he came into the custody of the INS. (Pet'r. Exs. 3 & 4.)[5] Since then, he has been detained by the INS subject to a final order of removal. Petitioner cannot be removed from the country until he receives the necessary travel documents[6] from the Yugoslavian Embassy (the "Embassy").

U.S. immigration laws permit the INS to detain aliens following a final order of deportation. *See* 8 U.S.C. § 1231 (West 2002). Sections 1231(a)(1) and (2) of 8 U.S.C. provide that the United States Attorney General shall remove and detain an alien within the "removal period", which is generally ninety days. The beginning date of a removal period can vary; in Petitioner's case, his removal period began on October 1, 2001, the date he was released from the Illinois Department of Corrections. *See* 8 U.S.C. § 1231(a)(1)(B)(iii). Rough calculations tell us his ninety-day removal period ended at the end of December 2001.

---

[3] Petitioner has been convicted three times of burglary, twice of possession of burglary tools and once of resisting a peace officer. (Resp. Ex. 2.)

[4] Codified at 8 U.S.C. § 1227(a)(2)(A)(iii), this section provides for the deportation of an alien who is convicted of an aggravated felony at any time after admission.

[5] Petitioner did not number the exhibits to his petition. We have numbered them in the order in which they were attached to his reply brief.

[6] When Petitioner entered the United States in 1989, he had a Yugoslavian passport. (Pet'r. Ex. 5.) He no longer has such a passport. (*Id.*)

If an alien is not removed during the ninety-day removal period, the Attorney General is permitted to detain him beyond this period. 8 U.S.C. § 1231(a)(6). The statute, applicable to Petitioner, reads:

> An alien ordered removed who is . . . removable under section 1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . .

*Id.* The statute does not provide for a maximum period of post-final-order detention.

The INS has conducted "post-order custody review" of Petitioner's case. On February 21, 2002, the District Director of the INS issued a Decision to Continue Detention, which stated that Petitioner was not being released because he had not demonstrated that he was no longer a threat to society and because his only potential sponsors lived in Michigan. (Resp. Ex. 3.) The case was then referred to the INS Headquarters Post-Order Detention Unit (the "HQPDU") for further review. On April 27, 2002, the Director of the HQPDU issued a Decision to Continue Detention, which stated:

> . . . it is the experience of the INS that it is able to carry out removals of Yugoslavian nationals. In fiscal year 2001, the INS successfully repatriated 78 Yugoslavian nationals. You have not provided any evidence to show that your case is an exception. A travel document has been requested from the Yugoslavian Government and is currently pending. Therefore, it is expected that your removal from the United States is feasible and will occur in the foreseeable future. You are required to assist the INS in its efforts to remove you by providing evidence of your citizenship and requesting a travel document on your own behalf. . . .

(Resp. Ex 4.) The INS conducted another custody review of Petitioner's case in March 2003. Petitioner remains in INS custody.

Petitioner asserts that there is no likelihood of his removal from the United States in the reasonably foreseeable future and that his continued detention by the INS is contrary to the recent

Supreme Court decision of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and contrary to the Constitution of the United States. Respondents argue that Petitioner's detention is in accordance with regulations promulgated by the Attorney General found at 8 C.F.R. § 241.13[7] and permissible under *Zadvydas* because there is a significant likelihood of repatriation.

## II. Legal Standard

A. *Availability of Judicial Review*

This case is before us on Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § ("section") 2241. "The purpose of a writ under this section is to provide a remedy to those individuals who are detained contrary to the constitution or laws of the United States." *Kacanic v. Elwood, et al.*, 2002 WL 31520362, at *2 (E.D. Pa. Nov. 8, 2002) (citing *Johnson v. Avery*, 393 U.S. 483, 485-86 (1969)). Congress has recently made significant changes to immigration law, limiting judicial review of certain deportation decisions. However, section 2241 habeas corpus proceedings remain available to aliens such as Petitioner seeking to challenge the post-removal-period of detention. *Zadvydas*, 533 U.S. at 687-88.

---

[7] 8 C.F.R. § 241.13 establishes review procedures to determine whether there is a significant likelihood of an alien's removal from the country in the reasonably foreseeable future. The section also provides for supervised release of aliens in certain cases pending deportation. To be released under supervision, an alien must cooperate in the process of obtaining his own travel documents. *See* 8 C.F.R. § 241.13(d)(2). Respondents claim Petitioner has not satisfied the requirements of this section because he has not assisted "in obtaining evidence relating to his citizenship", has not requested a travel document himself and has "not been forthcoming with information that could expedite his repatriation." (Resp. Brief at 9-10.)

-4-

B. *The Zadvydas Decision*

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that 8 U.S.C. § 1231(a)(6) did not permit the indefinite detention of lawfully admitted, but subsequently ordered removed, aliens during the post-removal period (*i.e.*, the time after the 90-day statutory removal period) while they awaited deportation. *Zadvydas*, 533 U.S. at 682.

The Court recognized that the statute's basic purpose was to assure an alien's presence at the time of his removal. *Id.* at 699. But the Due Process Clause of the U.S. Constitution applies to aliens who have entered the country, said the Court and "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. Interpreting the statute in order to "avoid a serious constitutional threat," the Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* The Court, recognizing the expertise of the Executive Branch in immigration matters and seeking to limit the occasions when courts would need to make difficult foreign policy judgments, read into the statute a presumptively reasonable limit on the period of post-final-order detention – six months. *See id.* at 701. The Court noted, however, that not every alien should be released after the expiration of the six-month period. *See id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

In response to the *Zadvydas* decision, the Attorney General has promulgated regulations governing custody review of aliens who have remained in detention beyond the six-month presumptively reasonable post-final-order period. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001) (now codified at 8 C.F.R. Pts. 3 &

241). Respondents argue that we should defer to the INS's custody determinations in these cases, only assessing "whether the basis for the [INS] decision was 'facially legitimate and bona fide,' as opposed to 'wholly irrational.'" (Resp. Brief at 8.) Respondents argue for other levels of deference in the alternative.

The Supreme Court's decision, however, does not contemplate that we defer to the INS's custody determination. "The basic federal habeas corpus statute grants the federal courts the authority to [determine whether a set of particular circumstances amount to detention within, or beyond, a period reasonably necessary to secure removal]." *Zadvydas*, 533 U.S. at 699. The habeas court

> must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. . . . And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Id.*

The Supreme Court established a framework to guide a habeas court's decision about whether a period of post-final-order detention longer than six months is permitted. First, the alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If the alien succeeds, then "the Government must respond with evidence sufficient to rebut that showing." *Id.* If a habeas court determines that removal is not "reasonably foreseeable", then it should order the alien released from

custody, subject to conditions of supervised release "appropriate in the circumstances." *Id.* at 699-700.

Petitioner's period of detention pending removal has exceeded the presumptively reasonable six months, and so we apply the *Zadvydas* framework to his case.

### III. Application of *Zadvydas*

A. *Petitioner's Showing*

We find that Petitioner has shown good reason to believe that there is no significant likelihood he will be removed in the reasonably foreseeable future. In reaching this conclusion, we rely on the amount of time that Petitioner has already spent in custody and the Embassy's February 2002 statement that it will not issue a travel document to Petitioner. *See Kacanic*, 2002 WL 31520362, at *3 (court relied on time spent in custody, inaction of Yugoslavian Embassy and INS admissions).

As stated above, Petitioner's removal period began on October 1, 2001. His ninety-day removal period expired on December 30, 2001 and the six-month presumptively reasonable period provided for in *Zadvydas* expired at the end of March 2002. At the time he filed his habeas petition, Petitioner had already spent one year awaiting his removal, double the amount of time the Supreme Court considered presumptively reasonable. The Supreme Court did not articulate a maximum time limit for post-final-order detention, but it did say that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

The Embassy has indicated that it will not issue a travel document to Petitioner. A letter, dated February 2, 2002, from the Embassy to Mr. Ronald P. Easterday at the INS in Chicago states:

> . . . the Embassy has the honor to inform you that according to the response of the Yugoslav authorities neither the identity nor the Yugoslav citizenship of Mr. Shefqet Breznica was established. Due to that fact the Embassy of the Federal Republic of Yugoslavia in Washington, D.C. cannot issue a travel document for Mr. Shefqet Breznica.

(Pet'r. Ex. 6.) In January 2003, Petitioner faxed a letter to the Embassy, explaining that he was an Albanian from Kosovo, that he had a Yugoslavian passport when he came to the United States in 1989, and that the INS was trying to deport him back to Yugoslavia but could not because he lacked a travel document from the Embassy. (Pet'r. Ex. 5.) He requested that the Embassy provide some information about his situation. We have no evidence that indicates a response has been received from the Embassy or that the Embassy's position about issuing a travel document has changed.

The period of Petitioner's post-final-order detention has at this time exceeded seventeen months and so the "reasonably foreseeable future" must now come very quickly. *See Zhou v. Farquharson*, 2001 U.S. Dist. Lexis 18239, at *3-4 (D. Mass. Oct. 19, 2001) (granting habeas relief when post-final-order detention period was 13 months). Petitioner has submitted evidence indicating the Embassy will not issue him a travel document. We find that he has shown no significant likelihood of removal in the reasonably foreseeable future. It is now incumbent on Respondents to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701.

B. *The INS Response*

Respondents first make the argument that Petitioner has not cooperated with the INS to effect his deportation and that his lack of cooperation justifies his continued detention. We find this argument unconvincing. Respondents have not detailed specific occasions of Petitioner's lack of

cooperation. Petitioner has obtained a birth certificate from the United Nations Interim Administrative Mission in Kosovo. (Pet'r. Ex. 1.) Petitioner has recently tried to obtain information about a travel document from the Embassy. (Pet'r. Ex. 5.) He has completed two INS Inquiry Forms seeking information from the INS about the status of his deportation. (Pet'r. Exs. 3 & 4.) There is no evidence that the INS responded to his inquiries. The only evidence submitted by Respondents relating to Petitioner's failure to cooperate is the HQPDU Decision to Continue Detention letter, a form letter which stated very generally that Petitioner was required to provide evidence of his citizenship and request a travel document on his behalf. (Resp. Ex. 4.). Moreover, as we have already stated, we are not obligated to defer to the INS's custody decision in this case. *See Zadvydas*, 533 U.S. at 699 (28 U.S.C. § 2241 grants federal courts the authority to determine whether detention is "within, or beyond, a period reasonably necessary to secure removal").

Respondents have also tried to present evidence that demonstrates a likelihood of Petitioner's removal in the reasonably foreseeable future, as *Zadvydas* requires. *Zadvydas*, 533 U.S. at 701. We find they have not succeeded. Respondents say the "INS has made efforts, and continues to make efforts with the Yugoslavian embassy" to secure a travel document for Petitioner. (Resp. Brief at 10.) But the INS has been trying to obtain a travel document since October 2001 with no luck to date.

We note initially that we lack evidence demonstrating the INS's "continuing" efforts to obtain the necessary document. There is evidence of communications between the INS and the

Embassy in October 2001[8] and in January 2003[9], (Pet'r. Ex. 6, Resp. Ex. 5), but no evidence of specific communications in the interim. *See Kacanic*, 2002 WL 31520362, at *5 (INS failure to make timely efforts to remove petitioner one factor of court's finding that petitioner's removal not likely in the reasonably foreseeable future). Even if the INS has been making regular efforts to secure Petitioner's travel document since October 2001, at this time there must be some concrete evidence of progress. The INS cannot rely on good faith efforts alone. *See Zadvydas*, 533 U.S. at 702 (rejecting the Fifth Circuit *Zadvydas* court's holding that detention was lawful as long as government made "good faith efforts to effectuate . . . deportation" and alien failed to show deportation was impossible) (internal quotations omitted). Respondents have not told us what was learned in January 2003 about the status of the travel document, such as the reasons for the delay, the assurances from the Embassy that the document is forthcoming, or even whether the Embassy is willing to issue the document to Petitioner at all. *See Thompson v. INS*, 2002 U.S. Dist. Lexis 23936, at *16 (E.D. La. Sept. 13, 2002) (government failed to meet burden that removal was in reasonably foreseeable future in part because no evidence was presented that government of Guyana responded to a request for travel documents).

The only affirmative representation made by the INS about the likelihood of Petitioner's removal in the reasonably foreseeable future is the HQPDU's statement in its Decision to Continue Detention that 78 Yugoslavian nationals have been removed during fiscal year 2001. (Resp. Ex. 4.)

---

[8] The February 2002 letter from the Embassy to Easterday was apparently in response to an October 2001 letter from Easterday to the Embassy requesting a travel document for Petitioner. (Pet'r. Ex. 6.)

[9] In mid-January 2003, Kevin McDonald, INS Supervisory Deportation Officer, met with representatives from the Embassy to discuss Petitioner's case, among others. McDonald sent a letter to the Embassy on January 31, 2003 as a follow up to that meeting. (Resp. Ex. 5.)

But this number standing alone carries no weight. We do not know how many aliens were denied travel documents by the Embassy, or how many of the seventy-eight aliens who were successfully removed had criminal histories or lacked a Yugoslavian passport. *See Kacanic*, 2002 WL 31520362, at *4 (rejecting INS information about the number of aliens removed to Yugoslavia because it provided no information specific to the petitioner's case). We do not have enough information to make a meaningful determination about whether or not Petitioner will be removed in the reasonably foreseeable future. *Id.* (citing cases which find that evidence about other aliens having been deported to a habeas petitioner's country does not carry the government's burden under *Zadvydas*).

Looked at another way, the INS's apparent success in removing seventy-eight aliens to Yugoslavia speaks to the likelihood, or rather the lack thereof, of removing Petitioner in the reasonably foreseeable future. If the INS was able to remove this many aliens in one year, this fact may underscore the problems it is having in removing Petitioner, particularly since Petitioner has been in INS custody since October 2001 and his travel document has been "requested" from the Embassy and "pending" since at least April 2002, as the INS assured him. (Resp. Ex. 4.) *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002). We think ample time has passed in order for the INS to obtain a travel document that has been "pending" now for at least one year. *See id.* at 48 (finding that an INS claim made nine months earlier that a travel document was "pending" was false).

Petitioner need not make a showing that removal is impossible. *See Zadvydas*, 533 U.S. at 702 (rejecting this requirement of the Fifth Circuit *Zadvydas* court). Although some possibility of removal may exist, Petitioner's period of post-final-order detention has been sufficiently long such that a remote, non-specific possibility does not satisfy Respondents' burden. *See Mohamed v.*

*Ashcroft*, 2002 U.S. Dist. Lexis 16179, at *3 (W.D. Wash. Apr. 15, 2002) (adopting magistrate judge's finding that government did not meet *Zadvydas* burden because it provided no information regarding how or when it expected to obtain documents or cooperation from foreign government).

### III. Conclusion

Petitioner has shown there is no significant likelihood of his removal in the reasonably foreseeable future. Respondents have thirty days to remove Petitioner from the country. If Respondents cannot remove Petitioner within thirty days, Petitioner's writ of habeas corpus will issue and Petitioner shall be released on conditions suitable to the INS, which may include those set forth in 8 C.F.R. § 241.5.

**ENTER:**

UNITED STATES DISTRICT JUDGE

DATED: 4-25-03